UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON

Eastern District of Kentucky
F I L E D
AUG 1 6 2006
AT LONDON
LESLIE G. WHITMER
CLERK U.S. DISTRICT COURT

CIVIL ACTION NO. 05-386-GWU

TOMMY JARVIS, PLAINTIFF,

VS. **MEMORANDUM OPINION**

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY, DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative denial of his application for Supplemental Security Income (SSI). The appeal is currently before the Court on cross-motions for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial review of Social Security disability benefit cases:

1. Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to Step 2. See 20 C.F.R. 404.1520(b), 416.920(b).

2. Does the claimant have any medically determinable physical or mental impairment(s)? If yes, proceed to Step 3. If no, the claimant is not disabled. See 20 C.F.R. 404.1508, 416.908.

3. Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities? If yes, proceed to Step 4. If no, the claimant is not disabled. See 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 461.921.

1

4.  Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. See 20 C.F.R. 404.920(d), 416.920(d).

5.  Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6. See 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6.  Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work? If yes, the claimant was not disabled. If no, proceed to Step 7. See 20 C.F.R. 404.1520(e), 416.920(e).

7.  Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy? If yes, the claimant is not disabled. See 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply. Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to

2

support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 C.F.R. Section 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1)

3

> whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford

Jarvis

or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. 416.965(a) and 20 C.F.R. 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

Jarvis

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 C.F.R. 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency

6

may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments. Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Tommy Jarvis, was found by an Administrative Law Judge (ALJ) to have a combination of "severe" impairments as a result of chronic back, neck, and shoulder pain, an anxiety disorder, and borderline intellectual functioning. (Tr. 24). Nevertheless, based in part on the testimony of a vocational expert (VE), the ALJ determined that Mr. Jarvis retained the residual functional capacity to perform a significant number of jobs existing in the economy and, therefore, was not entitled to benefits. (Id.). The Appeals Council declined to review, and this action followed.

At the administrative hearing, the ALJ had asked the VE whether a person of the plaintiff's age of 22 years, with a second-grade reading ability, and lack of past relevant work experience, could perform any jobs if he had the ability to work at all exertional levels, but would be limited to only simple, repetitive tasks and instructions in routine, non-public settings "that are object focused duties." (Tr. 342). The VE responded that there were jobs such a person could perform, and proceeded to give

Jarvis

the numbers in which they existed in the regional and national economies. (Tr. 343-4).

On appeal, this Court must determine whether the administrative decision is supported by substantial evidence.[1]

Although Mr. Jarvis alleged disability primarily due to back pain which he claimed left him essentially an invalid (Tr. 117, 329-32, 335), physical evaluations throughout the record were essentially normal (e.g., Tr. 174, 191-5, 252, 256-8) and the ALJ could reasonably have relied upon the recent opinion of Consultative Examiner Bobby J. Kidd that the plaintiff had a normal physical examination (Tr. 258) and the opinion of a state agency reviewing physician, Dr. H. T. Anzures, that Mr. Jarvis did not have a "severe" physical impairment (Tr. 301). The plaintiff does not allege any error regarding the physical findings.

Nor does Mr. Jarvis challenge the ALJ's finding that he had borderline intellectual functioning, rather than a lesser level of functioning. Although a recent evaluation by Psychologist George Lester showed IQ scores below 70, and first

---

[1] The plaintiff had filed a prior application for benefits on February 12, 2002 (Tr. 58-60), which was denied at the initial level in June, 2002 (Tr. 37, 39-42) and not further pursued. The ALJ stated that the prior decision would not be reopened (Tr. 16), but proceeded to consider a large volume of evidence submitted in connection with the prior claim (e.g., Tr. 153-9, 171-201). The prior decision may have been constructively reopened regardless of the ALJ's stated intent, see Boyes v. Secretary of Health and Human Services, 46 F.3d 510, 512 (6th Cir. 1994), but, in view of the Court's ultimate determination, the question is academic.

8

grade reading, spelling, and arithmetic abilities (Tr. 262), a previous evaluation by Psychologist James Leisenring in connection with the plaintiff's first application had shown all IQ scores to be above 70 along with a second-grade reading ability (Tr. 198). The state agency reviewing psychologist, Dr. Steven Scher, reviewed the evidence in November, 2003, and noted that the plaintiff's IQ testing from the Clay County school system had showed scores in the 70s-80s on two occasions and in the 60s-70s in sixth grade. (Tr. 154-6, 299, 303-5). Dr. Scher opined that Mr. Lester's scores were invalid in view of the other results, that Mr. Jarvis had good general adaptive skills, and was likely in the "borderline intellectual functioning" range but "definitely not" the "mild mental retardation" range. (Tr. 299).

The plaintiff does argue on appeal that the ALJ's hypothetical question is not properly reflective of his functional mental restrictions. Mr. Leisenring, who had examined Mr. Jarvis in March, 2002 in connection with his first SSI application, opined that Mr. Jarvis would be "modestly impaired" in reference to his ability to understand, remember, and carry out instructions, and would be "rather significantly compromised" in reference to his ability to respond to supervision, co-workers, and work pressures in a work setting, as a result of his "reported panic disorder." (Tr. 200). Mr. Lester thought that Mr. Jarvis would have only a "moderately impaired" ability to relate to others, including fellow workers and supervisors, a moderately limited ability to maintain attention and concentration over a full workday and to deal

9

with stresses of day-to-day work, and a "fair" ability to understand, remember, and carry out simple instructions. (Tr. 263-4). A state agency psychologist, Dr. Jane Brake, had completed a mental residual functional capacity assessment in March, 2002, following Mr. Leisenring's examination, indicating that Mr. Jarvis had a "moderately limited" ability to understand, remember, and carry out detailed instructions, maintain attention and concentration for extended periods, and work in coordination with others without being distracted by them. (Tr. 265). Dr. Scher, who reviewed the evidence much later, following Mr. Lester's examination, reached slightly different conclusions, indicating that Mr. Jarvis had a "moderately limited" ability to understand, remember, and carry out detailed instructions, interact appropriately with the general public, and respond appropriately to changes in the work setting. (Tr. 297-8).

The plaintiff alleges that both Dr. Brake and Dr. Scher found limitations in maintaining attention and concentration for extended periods but, in fact, Dr. Scher did not indicate such a limitation. (Tr. 297-8). Mr. Lester had listed such a restriction in his narrative report, but Dr. Scher questioned the validity of the results obtained by Mr. Lester. (Tr. 299). Dr. Brake did not review any of the evidence after April, 2002. Dr. Scher was a reviewing source who had access to all the evidence, and the ALJ could reasonably have relied upon his conclusions. Since the hypothetical

Jarvis

question was consistent with the areas of limitation found by Dr. Scher, it is supported by substantial evidence.

The decision will be affirmed.

This the ___/6___ day of August, 2006.

*G. W. Unthank* (signature)
G. WIX UNTHANK
SENIOR JUDGE

11